Gerry P. Fagan
MOULTON BELLINGHAM PC
Suite 1900, Crowne Plaza
P. O. Box 2559
Billings, Montana 59103-2559
Telephone: (406) 248-7731
Fax: (406) 248-7889
Gerry.Fagan@moultonbellingham.com

*Attorneys for Defendants AGCS Marine Insurance Company,*
*Liberty Mutual Insurance Company, and Torus Insurance Company*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
### BILLINGS DIVISION

| | |
|---|---|
| GALILEA, LLC, | Case 1:15-cv-00084-SPW |
| Plaintiff, | |
| -vs- | |
| AGCS MARINE INSURANCE COMPANY, LIBERTY MUTUAL INSURANCE COMPANY, and TORUS INSURANCE COMPANY, | **DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS AND TO COMPEL ARBITRATION** |
| Defendants. | |

## **TABLE OF CONTENTS**

**Page No.**

TABLE OF AUTHORITIES ................................................................... iii

PRELIMINARY STATEMENT ............................................................2

FACTS ...............................................................................................3

      A.    The Assured is a Nevada Based Limited Liability Company
            And a Sophisticated Insurance "Underwriter" who had
            Received a Prior Insurance Quote from Pantaenius ............................3

      B.    The Signed Applicant's Statement Represented that the
            Information was "Read and Understood" ...............................................5

      C.    Coverage was Bound on May 13, 2015, when the Insurance
            Binder was Issued and the Policy and Supporting Invoice were
            Issued Well Before the Loss.................................................................7

      D.    Galilea, LLC Advised Pantaenius of its Claim on June 24, 2015
            and the Claim was Denied on June 28, 2015 .......................................9

LEGAL ARGUMENT..........................................................................11

POINT I:  THE ACTION SHOULD BE DISMISSED BASED ON
THE CLAUSE REQUIRING ARBITRATION OF DISPUTES IN
NEW YORK BEFORE THE AMERICAN ARBITRATION
ASSOCIATION ..................................................................................11

POINT II:  DEFENDANTS ISSUED THE INSURANCE POLICY
WITH NOTICE OF THE ARBITRATION CLAUSE IN THE
APPLICATION, THE QUOTATION, THE BINDER, AND THE
POLICY WHICH CLEARLY ESTABLISH A CONTRACT IN
WHICH THE PARTIES AGREED TO ARBITRATE THEIR
DISPUTES IN NEW YORK BEFORE THE AAA .............................14

i

POINT III:  MONTANA LAW IS PREEMPTED BY THE FEDERAL
ARBITRATION ACT IN ACCORDANCE WITH NINTH CIRCUIT
PRECEDENT AND THIS MATTER SHOULD BE REFERRED TO
ARBITRATION ......................................................................................19

CONCLUSION ...........................................................................................24

# TABLE OF AUTHORITIES

**Case Law**                                                    **Page No.**

*AT&T Mobility LLC v. Concepcion,*
563 U.S. 333, 131 S.Ct. 1740, 179 L.Ed.2d 742 (2011) ...................................15, 22

*Bixler v. Next Financial Group, Inc*. 858 F.Supp.2d 1136
(D. Mont., Helena Division),
*appeal dismissed*, 9th Cir. No. 12-35292 (May 11, 2012) ......................... 19-21, 24

*Braintree Labs., Inc. v. Citigroup Global Markets, Inc.,*
671 F. Supp. 2d 202, 205 (D. Mass. 2009),
*aff'd in part, appeal dismissed in part,* 622 F.3d 36 (1st Cir. 2010) ......................15

*Brennan v. Opus Bank*, 796 F.3d 1125 (9th Cir. 2015) ..........................................18

*Circuit City Stores, Inc. v. Adams,* 279 F.3d 889, 892 (9th Cir. 2002) .................15

*Collins & Aikman Products Co. v. Bldg. Sys., Inc.,*
58 F.3d 16, 19-20 (2d Cir. 1995) ............................................................................16

*Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213,
105 S.Ct. 1238, 84 L.Ed.2d 158 (1985) ..................................................................14

*East River Steamship Corp. v. Transamerica Delaval Inc.*,
476 U.S. 858 (1986) ................................................................................................17

*Elk Mountain Motor Sports v. Arctic Cat Sales, Inc.*,
No. CV 13-7-H-CCL, 2013 WL 5492960 (D. Mont. Oct. 1, 2013) ................. 13-14

*In re Facebook, Inc., IPO Securities and Derivatives Litigation*,
922 F. Supp. 2d 445, 457-58 (S.D.N.Y. 2013) .......................................................12

*InterGen N.V. v. Grina,* 344 F.3d 134, 142 (1st Cir.2003) .....................................15

*Intermeat, Inc. v. Am. Poultry Inc.*,
575 F.2d 1017 (2d Cir. 1978) .................................................................................17

*La Reunion Francaise SA v. Barnes*,
247 F.3d 1022 (9th Cir. 2001) ..................................................................16

*La Reunion Francaise, S.A. v. Christy*, 122 F. Supp. 2d 1325, 1334
(M.D. Fla. 1999) *aff'd sub nom. La Reunion Francaise v. Christy*,
214 F.3d 1357 (11th Cir. 2000) ...............................................................17

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Lecopulos*,
553 F.2d 842 (2d Cir. 1977) ....................................................................17

*Mortensen v. Bresnan Commc'ns, LLC*,
722 F.3d 1151 (9th Cir. 2013) ..................................................... 21-23, 24

*Phillips v. Audio Active Ltd.*, 494 F.3d 378, 383-84 (2d Cir. 2007) ................13, 14

*Preston v. Ferrer,* 552 U.S. 346, 128 S.Ct. 978,
169 L.Ed.2d 917 (2008) ..........................................................................15

*Sentry Select Ins. Co. v. Royal Ins. Co. of Am.*,
481 F.3d 1208, 1217-18 (9th Cir. 2007) .................................................16

*Triton Lines, Inc. v. Steamship Mut. Underwriting Ass'n
(Bermuda) Ltd.*, 707 F. Supp. 277 (S.D. Tex. 1989) ..............................16

*Volt Info. Sciences, Inc. v. Board of Trustees of Leland
Stanford Junior Univ.,* 489 U.S. 468, 478, 109 S.Ct. 1248,
103 L.Ed.2d 488 (1989) ...................................................................... 15-16

## Statutory Authority

Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* ....................................*passim*

M.C.A. 27-5-114 ....................................................................................20, 24

Defendants, AGCS Marine Insurance Company, Liberty Mutual Insurance Company and Torus National Insurance Company, are the interested underwriters ("Defendants") who issued a marine insurance policy to Plaintiff, Galilea, LLC ("Plaintiff" and/or "Assured").  Defendants move to dismiss this action pursuant to Rules 12(b)(3) and/or 12(b)(6)[1] of the Federal Rules of Civil Procedure and the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.*  Further, Defendants seek an order compelling Plaintiff to arbitrate the disputes between the parties pursuant to a binding and enforceable arbitration clause set forth in the Pantaenius America Yacht Insurance Policy ("PAYP") for the yacht, GALILEA, that Defendants insured pursuant to the terms and conditions of that policy, including the "Cruising Areas" warranty contained therein.

For the reasons set forth herein, the Complaint filed by Plaintiff should be dismissed and Plaintiff should be compelled to arbitrate the disputes between the parties.  Reference is made herein to declarations and exhibits filed in relation to Plaintiff's competing motion to stay arbitration.

---

[1] In an abundance of caution, Defendants assert Fed. R. Civ. P. 12(b)(6) in addition to Rule 12(b)(3), which appears to be the preferred procedural device. District courts "… have treated a pre-trial motion based on the presence of a forum selection clause as a Motion to Dismiss under either Fed. R. Civ. P. 12(b)(3) or 12(b)(6)." *AIG Mexico Seguros Interamericana, S.A. de C.V. v. M/V ZAPOTECA*, 844 F. Supp. 2d. 440, 442 (S.D.N.Y. 2012) (citations omitted).

## PRELIMINARY STATEMENT

On August 4, 2015, Defendants commenced arbitration proceedings before the American Arbitration Association ("AAA") in New York by demanding arbitration in accordance with the Commercial Arbitration Rules, making the requisite filings with the AAA, paying the appropriate fees, and sending notice in accordance with AAA requirements to the Respondent, Galilea, LLC, at its address in Montana, and a certified mail receipt acknowledgement was received. Thereafter, Galilea, LLC, filed the captioned action on August 21, 2015, wherein it asserted that the matter before the AAA is not arbitrable, in that the arbitration clause was either not agreed to or otherwise enforceable under Montana law.

Defendants maintain that the applicable standard for the enforcement of the arbitration clause may be found in the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-15, and the application of Montana law is inconsistent with Federal Maritime Law and the forum selection clause set forth in Section A.11 of the Policy which was agreed to by Plaintiff.  Galilea, LLC, which owned the yacht, is a limited liability company that is organized and existing under Nevada law. Its principal member, Mr. Kittler, is employed as an insurance underwriter, and the application which was signed by Galilea, LLC, clearly set forth that the AAA was the forum for the arbitration of all disputes under the policy. Galilea, LLC and its members were clearly aware of the terms and provisions of the application, the resulting

2

insurance binder, and the terms and conditions of the policy which had been in effect for several weeks before the yacht, having an agreed value of $1,566,000 went aground in Panamanian waters. Accordingly, Defendants seek dismissal of Plaintiff's Complaint and seek to compel arbitration before the AAA in New York as provided by the FAA, 9 U.S.C. § 4, and in accordance with the AAA arbitration clause that was agreed to by Plaintiff.

## **Facts**

A. The Assured is a Nevada Based Limited Liability Company and a Sophisticated Insurance "Underwriter" who had Received a Prior Insurance Quote from Pantaenius.

The application for insurance from Galilea, LLC was submitted by email to Pantaenius America Ltd. ("Pantaenius"), the third party administrator for the Defendants on May 12, 2015, in order to obtain insurance coverage for the yacht, GALILEA, which the company owned. (Ex. A to Decl. of Taunia Kittler.) The signed application was submitted by the named insured, "Galilea LLC, 3701 Trakker Trail, Suite F1, Bozeman MT 59718," (T. Kittler Decl. Ex. A), an entity organized under the laws of the state of Nevada (Fagan Decl. ¶10, Ex. 5-1), having a business address at 2920 Green Valley Parkway, Building One Suite 111, Henderson, Nevada 89014 (Fagan Decl. ¶10, Ex. 5-2). Mr. & Mrs. Kittler are apparently the principal members of Galilea, LLC, who submitted a PAYP Online Quote Request to Pantaenius on May 7, 2015. A copy of the "Pantaenius America

3

Online Quote Request / #21124282 dated May 7, 2015" ("PAYP Online Quote

Request") was submitted by GALILEA LLC wherein the following information

was expressly provided under the heading, "Additional Vessel Information":

    Cruising Area:          West Coast USA
    Vessel located south of 30.5 degrees north latitude during hurricane
    season?     No
    Will the vessel be used for towing?    No

(Giacomazza Decl.¶ 3, Ex. 1).

The signed Application was forwarded by email to Pantaenius who is

located in New York. (T. Kittler Decl. Ex. A.) Information relevant to the yacht's

use and location were provided by Galilea, LLC, which designated the yacht's port

of registry to be "Las Vegas, Nevada", that it would spend the hurricane season in

"San Diego, California", and the insured disclosed its occupation as an

"underwriter". (T. Kittler Decl. Ex. A, Application at page 2 / 6.)  Moreover, the

Online Quote Request further disclosed that Mr. Kittler was a graduate of the

Piney Point Maritime Academy, had a license and/or certification as a merchant

mariner, and he listed his rather extensive cruising experience. (Giacomazza Decl.

¶ 4, Ex. 1.) The insurance was to replace coverage already in place, presumably

with another underwriter, as during the prior year, a "Quotation for Yacht

Insurance – Ref. No. 21030396) was supplied to "Galilea LLC" on May 6, 2014,

with similar  provisions, but with a more expansive Cruising Area than Galilea's

Application requested on May 12, 2015.  (Giacomazza Decl. ¶¶ 5-6, Ex. 2.) So, the

4

Galilea LLC policy does not provide coverage for worldwide navigation because it was "neither the Cruising Area that Galilea, LLC requested nor the Cruising Area specified by the Policy." (Giacomazza Decl. ¶ 7.) Similarly, factors such as the Cruising Area affect the premium to be charged. (Giacomazza Decl. ¶7.)

B. The Signed Applicant's Statement Represented that the Information Was "Read and Understood".

Among the application's provisions that contradict Plaintiff's contention that it was not aware that arbitration was the selected forum for disputes, is the bolded heading, **GENERAL INFORMATION AND CONDITIONS**, set forth at page 5 of the signed application (T. Kittler Decl. Ex. A), wherein the following was stated:

> Any dispute arising out of or relating to the relationship between Pantaenius America Ltd. and/or our participating underwriters and the insured shall be settled by arbitration administered by the American Arbitration Association in accordance with its Commercial Arbitration Rules, and judgment on the award rendered by the arbitrator may be in any court having jurisdiction thereof. The dispute shall be submitted to one arbitrator.  This relationship shall be governed by the laws of the state of New York. The place of arbitration shall be New York, New York.

> Place of Jurisdiction. For any and all disputes arising out of or relating to the legal relationship between the Insurers and the Insured or co-insured or additional named insured or third parties New York shall always be place of jurisdiction.

> Choice of Law Clause. This Agreement shall be governed by the laws of New York without regard to conflict of law principles.

In addition to the broadly worded arbitration clause providing for the resolution of "any dispute" in arbitration before the AAA under its Commercial Arbitration Rules, Plaintiff consented to arbitration in New York as well as to be "governed by the laws of New York without regard to conflict of law principles." The signed application also contained the following paragraph in bolded type above the signature line:

**APPLICANT'S STATEMENT**

I have read and understood all of the information and statement contained in this application, which I understand will be relied upon by the Insurance Company in placing any risk associated with this application. I acknowledge that some of the information contained in this application may have been filled in by Pantaenius America Ltd. based upon information provided by me or my agents. I certify that to the best of my knowledge all information and statements contained in this application are true and correct.

If the named insured is a business entity, the undersigned warrants they have legal authority to execute on behalf of the entity.

While the signed Application was submitted as Exhibit A to the Declaration of Taunia Kittler, Plaintiff disingenuously maintains that the arbitration provision was "buried" in the six-page Application never mentioning that the provision clearly indicated that arbitration in New York before the AAA was the agreed forum for the resolution of disputes, that the application was signed, that the Assured attested in the "Applicant's Statement" that the provisions were read and understood, and that it had authority to execute the application on behalf of the

business entity – Galilea, LLC. No objection was made to the Cruising Area when the Assured submitted its signed Application on May 12, 2015. (Giacomazza Decl. ¶ 10.) Moreover, the prior insurance quote issued by Pantaenius for this yacht contained a far broader Cruising Area, along with the same arbitration provision, and a significantly higher premium estimate than the $7,779.60 that was paid for the policy. (Giacomazza Decl. ¶¶ 5-6, Ex. 2.) Surely, Galilea, LLC was not a novice when it came to procuring insurance for its vessel or insurance generally, as its principal member is an underwriter.

    C.   <u>Coverage Was Bound on May 13, 2015 when the Insurance Binder was Issued and the Policy and Supporting Invoice were Issued Well Before the Loss</u>.

Based on the signed Application and representations made therein, a Binder for Yacht Insurance – Ref. No. 21124282 dated May 13, 2015 ("Binder"), which was to be effective from May 12, 2015 until May 26, 2015, was forwarded by email to Galilea's email address and the printed language in the binder stated in bold type:

> As instructed, we have bound insurance coverage described below on behalf of the issuing insurance company or companies. Policy and invoice will be delivered to you when all outstanding documentation and information is received and accepted by Pantaenius America. This binder shall remain in force until the binder expiration date listed above. This insurance coverage is subject to the terms and conditions of the insurance policy.

(Ex. C to Declaration of Chris Kittler at page 1 / 3.)

7

A draft policy marked "Sample" was also forwarded to the Plaintiff on May 13th along with a quotation, and thereafter the insurance policy was similarly provided to the assured by email on May 14, 2015, and the relevant arbitration clause in that policy, was set forth at paragraph A.11 which stated as follows:

**A11:  JURISDICTION AND CHOICE OF LAW**

This insurance policy shall be governed by and construed in accordance with well established and entrenched principles and precedents of substantive United States Federal Maritime Law, but where no such established and entrenched principles and precedents exist, the policy shall be governed and construed in accordance with the substantive laws of the State of New York, without giving effect to its conflict of laws principles, and the parties hereto agree that any and all dispute arising under this policy shall be resolved exclusively by binding arbitration to take place within New York County, in the State of New York and to be conducted pursuant to the Rules of the American Arbitration Association.

Despite the allegations set forth in the Kittler Declarations, at no time during the submission of the online quote request, the application, the issuing of the insurance binder or policy, or at any time prior to the loss, were Andrea Giacomazza or anyone else at Pantaenius advised by telephone or otherwise that the insurance was being placed for a yacht that was transiting from the Caribbean to the United States West Coast. To the contrary, the description of the "Cruising Area" requested by the Assured in the online quote request was "West Coast USA" and this also was specifically set forth in the Application, the Insurance Binder and the policy, all of which were disclosed to Galilea, LLC and its representatives, Mr. and Mrs. Kittler. (Giacomazza Decl. ¶ 2.)

D. <u>Galilea, LLC Advised Pantaenius of Its Claim On June 24, 2015, and the Claim Was Denied on June 28, 2015.</u>

On June 24, 2015 Pantaenius was advised of a claim arising from the grounding of the GALILEA, which was reported by the assured's representative, Mr. Kittler by telephone at or around 12:15 PM. The call was received by the Pantaenius' Claims Advisor, Thomas Mullady. (Mullady Decl. ¶ 2.) Based on the information conveyed by Mr. Kittler when he advised Pantaenius of the claim/grounding, Pantaenius understood that the vessel had grounded while enroute to or from the Panama Canal on June 24, 2015. (Mullady Decl. ¶ 3.)

It should be noted that the location of the grounding in Panama (Nombre de Dios) has a latitude of 9 degrees, 35.5 minutes North, more than 1,200 miles south of the Cruising Area to which the policy applies, as San Diego's latitude is 32 degrees, 42.55 minutes North. (Mullady Decl. ¶ 7, Ex. 2.) Notice was given to the Assured on June 28, 2015, that based upon all of the information available to Pantaenius at that time there would be no coverage for the loss and/or salvage of the vessel, and that the Assured should therefore act as a prudent self-insured to protect its property. (Mullady Decl. ¶ 8, Ex. 3.)  The location of the grounding was confirmed by an attending surveyor who conducted an interview of Mrs. Kittler and Captain Jennie Minor on/about June 28, 2015. (Mullady Decl. ¶ 7.) Thereafter, on July 9, 2015 the Assured was again advised that there was no coverage for the loss. (Mullady Decl. ¶ 9, Ex. 4.)

9

The Assured contested the denial of the claim by written correspondence.

(C. Kittler Decl. ¶¶ 18-19.) Arbitration was demanded by Defendants on August 4,

2015, in accordance with the Commercial Arbitration Rules, the requisite filings

were made to the American Arbitration Association ("AAA"). (Fagan Decl. ¶ 7,

Exhibits 1-3.) Thereafter, Galilea, LLC, filed the captioned action on August 21,

2015, wherein it asserted that the matter before the AAA is not arbitrable.

Supporting excerpts from the AAA Commercial Arbitration Rules are provided,

and otherwise include Rule R-7. Jurisdiction, wherein, paragraph (a) provides:

> (a)     The arbitrator shall have the power to rule on his or her own
> jurisdiction, including any objection with respect to the existence,
> scope, or validity of the arbitration agreement or to the arbitrability of
> any claim or counterclaim.
> …

(Fagan Decl. ¶ 9, Ex. 4.)  A copy of the AAA's correspondence dated September

25, 2015 is similarly provided, and it addresses Galilea LLC's objection to the

Commercial Arbitration Rules and the number of arbitrators to be appointed. The

AAA determined that the dispute is governed by the Commercial Arbitration Rules

and is to be arbitrated before a Panel of three arbitrators. (Fagan Decl. ¶ 7, Ex. 3.)

Thus, any contention by Galilea LLC that the arbitration is to held under

"Consumer Rules" has been rejected by the AAA.

The arbitrator selection process is about to begin. (Fagan Decl. ¶ 8.) While

the matter has been stayed by the Court's order dated September 29, 2015 (Docket

entry no. 16), Defendants maintain that the AAA is the proper venue to resolve the issue of arbitrability, and is the agreed upon forum for resolution of all disputes.

## ARGUMENT

## POINT I

## THE ACTION SHOULD BE DISMISSED BASED ON THE CLAUSE REQUIRING ARBITRATION OF DISPUTES IN NEW YORK BEFORE THE AMERICAN ARBITRATION ASSOCIATION

Pursuant to the Federal Arbitration Act, where a party refuses to arbitrate under a written agreement, a party may move a district court for an order directing such arbitration to proceed.  9 U.S.C. § 4.  "The court shall hear the parties and, upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the Court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." *Id.*  Plaintiff has been advised of Defendants' intention to make this motion and opposes it.  Plaintiff has refused to arbitrate the dispute between the parties concerning Plaintiff's insurance claim relating to the grounding of its yacht outside of the navigational limits of the policy.  Instead, Plaintiff filed the instant action and moved to stay the arbitration proceedings in favor of litigation.

Further, the relevant legal standard with respect to a motion to dismiss for improper venue on the basis of a forum selection clause was recently set forth as follows:

A motion to dismiss for improper venue based on a forum selection clause is properly based on Rule 12(b)(3). A court may consider evidentiary matters outside the pleadings to resolve the jurisdictional issue. The burden on the party opposing enforcement of a forum selection clause "is analogous to that imposed on a plaintiff to prove that the federal court has subject matter jurisdiction over his suit or personal jurisdiction over the defendant." Thus, courts apply the standard of review applicable to motions to dismiss for lack of jurisdiction, taking the facts in the light most favorable to the party resisting enforcement of the forum selection clause.

*In re Facebook, Inc., IPO Securities and Derivatives Litigation*, 922 F. Supp. 2d 445, 457-58 (S.D.N.Y. 2013) (citations omitted).

With respect to dismissal on the basis of a forum selection clause, the Court of Appeals for the Second Circuit has stated:

Determining whether to dismiss a claim based on a forum selection clause involves a four-part analysis. The first inquiry is whether the clause was reasonably communicated to the party resisting enforcement. The second step requires us to classify the clause as mandatory or permissive, i.e., to decide whether the parties are *required* to bring any dispute to the designated forum or simply *permitted* to do so. Part three asks whether the claims and parties involved in the suit are subject to the forum selection clause.

If the forum clause was communicated to the resisting party, has mandatory force and covers the claims and parties involved in the dispute, it is presumptively enforceable. The fourth, and final, step is to ascertain whether the resisting party has rebutted the presumption of enforceability by making a sufficiently strong showing that "enforcement would be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching." *M/S Bremen v. Zapata Off-Shore Co.,* 407 U.S. 1, 15, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972) (establishing federal standard relating to enforcement of forum clauses applicable in admiralty and international transactions).

*Phillips v. Audio Active Ltd.*, 494 F.3d 378, 383-84 (2d Cir. 2007) (citations omitted).

In the present matter, there can be little doubt that the first three parts of the inquiry are satisfied as the forum clause was reasonably communicated to Plaintiff, it is a mandatory clause requiring arbitration in New York, and that the claims and parties involved are subject to the forum selection clause. As set forth above, the mandatory arbitration provisions were communicated to the Plaintiff in the application, the quotation, the binder, and the policy itself. The provisions, set forth below, are broad enough to encompass all of the disputes between the parties and the counts set forth in Plaintiff's complaint.

The application, completed and signed by Plaintiff as having been "read and understood", states that "[a]ny dispute" shall be settled by arbitration administered by the AAA in accordance with its Commercial Arbitration Rules. (T. Kittler Decl. Ex. A.) Therefore, it is disingenuous for Plaintiff to claim that it was unaware that disputes between the parties would be subject to mandatory AAA arbitration simply because Plaintiff apparently did not bother to read the policy in the more than six weeks between its issuance and the alleged grounding of the vessel. In *Elk Mountain Motor Sports v. Arctic Cat Sales, Inc.*, No. CV 13-7-H-CCL, 2013 WL 5492960, at *4 (D. Mont. Oct. 1, 2013), the Court rejected the argument that an agreement exceeded the reasonable expectations of a corporate

13

entity in view of its representatives' apparent failure to read the contract, noting

that "each party to a contract in Montana has a duty to understand the terms of the

agreement" and that a corporation cannot avoid the terms of its contracts by

complaining that it was not represented by counsel.

As the first three parts of the analysis are satisfied, the New York forum

clause is presumptively enforceable. See *Phillips*, 494 F.3d at 383 (2d Cir. 2007).

If Plaintiff attempts to resist application of the forum selection clause, it is required

to make a sufficiently strong showing that enforcement of the forum clause would

be unreasonable or unjust, or that the clause was invalid for such reasons as fraud

or overreaching. *See id*. There is no such evidence in the record.

## POINT II

### DEFENDANTS ISSUED THE INSURANCE POLICY WITH NOTICE OF THE ARBITRATION CLAUSE IN THE APPLICATION, THE QUOTATION, THE BINDER, AND THE POLICY WHICH CLEARLY ESTABLISH A CONTRACT IN WHICH THE PARTIES AGREED TO ARBITRATE THEIR DISPUTES IN NEW YORK BEFORE THE AAA

Federal arbitration policy respects arbitration agreements as contracts that

are enforceable in the same way as any other contract. To implement this

understanding, and "to overrule the judiciary's long-standing refusal to enforce

agreements to arbitrate," Congress adopted the Federal Arbitration Act ("FAA") 9

U.S.C. §§ 1 *et seq. Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 219-20, 105

S.Ct. 1238, 1241-42, 84 L.Ed.2d 158 (1985). The Federal Arbitration Act

establishes that contractual arbitration agreements must be enforced "save upon

such grounds as exist at law or in equity for the revocation of any contract." 9

U.S.C. § 2. These grounds include "generally applicable contract defenses," *AT&T*

*Mobility LLC v. Concepcion,* 563 U.S. 333, 131 S.Ct. 1740, 1746, 179 L.Ed.2d 742

(2011) (internal quotation marks omitted), like state law unconscionability, *Circuit*

*City Stores, Inc. v. Adams,* 279 F.3d 889, 892 (9th Cir. 2002).

Similarly, while the FAA embodies a "national policy favoring arbitration of

claims that parties contract to settle in that manner," *Preston v. Ferrer,* 552 U.S. 346,

128 S.Ct. 978, 983, 169 L.Ed.2d 917 (2008) (citation and quotation marks omitted),

the party moving to compel arbitration must show:

> … that a valid agreement to arbitrate exists, that the movant is entitled
> to invoke the arbitration clause, that the other party is bound by that
> clause, and that the claim asserted comes within the clause's scope.

*InterGen N.V. v. Grina,* 344 F.3d 134, 142 (1st Cir.2003), *Braintree Labs., Inc. v.*

*Citigroup Global Markets, Inc.,* 671 F. Supp. 2d 202, 205 (D. Mass. 2009) *aff'd in*

*part, appeal dismissed in part,* 622 F.3d 36 (1st Cir. 2010). As set forth in Point

III, *infra*, Defendants seek to compel arbitration pursuant to the signed application,

the arbitration clause set forth at A.11 of the policy, as the claims asserted by

Counts I-XII of the Complaint fall squarely within the scope of the arbitration

clause.

Federal law "does not require parties to arbitrate when they have not agreed

to do so..." *Volt Info. Sciences, Inc. v. Board of Trustees of Leland Stanford Junior*

*Univ.,* 489 U.S. 468, 478, 109 S.Ct. 1248, 1255, 103 L.Ed.2d 488 (1989). Federal

law "simply requires courts to enforce privately negotiated agreements to arbitrate,

like other contracts, in accordance with their terms." *Collins & Aikman Products Co.*

*v. Bldg. Sys., Inc.,* 58 F.3d 16, 19-20 (2d Cir. 1995).

A marine insurance policy is construed to be a 'maritime transaction' within

the definition provided by 9 U.S.C. § 1, since the policy involves coverage for a

vessel while in navigation, and it may be further considered to be a transaction

involving interstate commerce, which is liberally construed. *See Triton Lines, Inc.*

*v. Steamship Mut. Underwriting Ass'n (Bermuda) Ltd.*, 707 F. Supp. 277, 278 (S.D.

Tex. 1989) (Insurance contract covering a vessel is a maritime contract) (citing

Federal Arbitration Act, 9 U.S.C. § 1 (1982); *Insurance Co. v. Dunham,* 78 U.S.

(11 Wall.) 1, 20 L.Ed. 90 (1871)); *see also La Reunion Francaise SA v. Barnes*,

247 F.3d 1022 (9th Cir. 2001) ("We have recognized repeatedly that marine

insurance policies are maritime contracts for purposes of admiralty jurisdiction. …

insurance for a vessel is clearly within the scope of admiralty jurisdiction."); *Sentry*

*Select Ins. Co. v. Royal Ins. Co. of Am.*, 481 F.3d 1208, 1217-18 (9th Cir. 2007).

"The Federal Arbitration Act requires enforcement when a maritime contract has

an arbitration clause." *Triton*, 707 F. Supp. at 278.  The *Triton* court held that an

anti-arbitration provision of the Texas Insurance Code was inapplicable in view of

the Federal Arbitration Act.  *Id.* at 279.

16

Even if this matter were properly brought before this Court, and it is not in view of the arbitration clause, a dispute concerning the contract of marine insurance would fall within the Court's admiralty jurisdiction, rather than the diversity jurisdiction asserted by Plaintiff. Where there is admiralty jurisdiction, substantive maritime law applies. *East River Steampship Corp. v. Transamerica Delaval Inc.*, 476 U.S. 858, 864 (1986). In this connection, it has been held that established federal maritime law, not state law, controlled a dispute concerning breach of a warranty confining coverage to instances where a vessel was traveling within certain navigational limits and that admiralty law requires strict construction of express warranties in marine insurance contracts. *La Reunion Francaise, S.A. v. Christy*, 122 F. Supp. 2d 1325, 1334 (M.D. Fla. 1999) *aff'd sub nom. La Reunion Francaise v. Christy*, 214 F.3d 1357 (11th Cir. 2000).

Similarly, the enforceable arbitration clause requires the application of established and entrenched principles and precedents of substantive Federal Maritime Law to this dispute, unless no such principles and precedents exist, in which case the clause specifies that New York law applies – not Montana law. Consent to arbitration in New York is a consent to personal jurisdiction of the courts in New York. *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Lecopulos*, 553 F.2d 842 (2d Cir. 1977); *Intermeat, Inc. v. Am. Poultry Inc.*, 575 F.2d 1017, 1023 (2d Cir. 1978).

17

While construing the FAA in the context of an employment agreement, the

court in *Brennan v. Opus Bank*, 796 F.3d 1125, 1129 (9th Cir. 2015), noted that:

> For "any arbitration agreement within the coverage of the [FAA]," "[t]he court is to make th[e] [arbitrability] determination by applying the federal substantive law of arbitrability," *Mitsubishi Motors,* 473 U.S. at 626, 105 S.Ct. 3346 "absent clear and unmistakable evidence that the parties agreed to apply non-federal arbitrability law." *Cape Flattery,* 647 F.3d at 921 (internal quotation marks omitted).

The Ninth Circuit went further:

> Now that the question regarding incorporation of the AAA rules is squarely before us, we hold that incorporation of the AAA rules constitutes clear and unmistakable evidence that contracting parties agreed to arbitrate arbitrability.

*Brennan*, 796 F.3d at 1130 (9th Cir. 2015) (citations omitted).  In this connection,

the court noted that:

> Our holding today should not be interpreted to require that the contracting parties be sophisticated or that the contract be "commercial" before a court may conclude that incorporation of the AAA rules constitutes "clear and unmistakable" evidence of the parties' intent. Thus, our holding does not foreclose the possibility that this rule could also apply to unsophisticated parties or to consumer contracts. Indeed, the vast majority of the circuits that hold that incorporation of the AAA rules constitutes clear and unmistakable evidence of the parties' intent do so without explicitly limiting that holding to sophisticated parties or to commercial contracts.

*Brennan v. Opus Bank*, 796 F.3d 1125, 1130-31 (9th Cir. 2015) (citations omitted).

Taking account of the signed application, and the clear and unmistakable

evidence that AAA rules are incorporated into the arbitration clause that was

acknowledged as being "read and understood", the issue of arbitrability of the

dispute has been reserved for the American Arbitration Association.

## POINT III

## MONTANA LAW IS PREEMPTED BY THE FEDERAL ARBITRATION ACT IN ACCORDANCE WITH NINTH CIRCUIT PRECEDENT AND THIS MATTER SHOULD BE REFERRED TO ARBITRATION

While the application of Montana law is relied upon by Plaintiff to contest

the arbitration clause, the FAA preempts contrary state law but it does not require

the enforcement of arbitration agreements on "such grounds as exist at law or in

equity for the revocation of any contract." 9 U.S.C. § 2. This provision is often

referred to as the "savings clause". In its memorandum of law in support of its

application to stay the AAA arbitration, Plaintiff argues that the Court wrongly

decided *Bixler v. Next Financial Group, Inc*. 858 F.Supp.2d 1136 (D. Mont.,

Helena Division) *appeal dismissed*, 9th Cir. No. 12-35292 (May 11, 2012). The

decision dealt with the savings clause and the interplay between the FAA and state

law.

The *Bixler* decision involved a client agreement which the court considered

to be entered into by a sophisticated investor, and as the signed agreement

contained an arbitration clause and a Texas choice of law provision, defendant

moved to compel arbitration. In construing the same arguments being advanced by

Galilea, LLC in the pending matter, the *Bixler* decision enforced the arbitration

clause in the contract and determined that the McCarren –Ferguson Act ("MFA")

did not operate as a "reverse preemption of the FAA by MCA 27-5-114" because,

> the MFA provides that "[n]o Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance ... unless such Act specifically relates to the business of insurance...." 15 U.S.C. § 1012(b). Plaintiff argues that § 27–5–114 is a Montana law enacted for the purpose of regulating the business of insurance, and therefore it reverse preempts the FAA. In this case, the arbitration agreement does not pertain to an annuity contract, and therefore it does not even implicate § 27–5–114, M.C.A. In addition, this Montana statute is found in Montana's Uniform Arbitration Act, not in the Montana Insurance Code, and therefore the Court considers it highly unlikely that this arbitration statute was enacted for the purpose of regulating the business of insurance. *See Northwestern Corp. v. Nat'l Union Fire Ins. Co.,* 321 B.R. 120 (2005)(holding that the Federal Arbitration Act trumps the McCarren–Ferguson Act because Montana Insurance Code is Montana's exclusive method of regulation of business of insurance and § 27–5–114 not enacted for purpose of regulating business of insurance in Montana).
> In this case, the anti-arbitration statute applicable to annuity contracts found in Mont.Code Ann. § 27–5–114(2)(c) is preempted by the FAA, and therefore § 27–5–114(2)(c), M.C.A., would have no application to the motion to compel arbitration even were Montana law applied.

*Bixler v. Next Fin. Grp., Inc.,* 858 F. Supp. 2d at 1146-47 (D. Mont. 2012).

Therefore, Plaintiff's reliance on M.C.A. 27-5-114 as the basis for precluding

enforcement of an arbitration clause in an insurance agreement has already been

decided in *Bixler*, which held that the Montana statute was preempted by the FAA.

While the *Bixler* court decided that Texas had a materially greater interest in

the contract based on the five factors set forth in § 188(2) Restatement (Second) of

Conflict of Laws, it went further to conclude that:

20

… even if Montana law applied to this dispute, there would be no different outcome under Montana law on the motion to compel arbitration than under Texas law. "Montana cases "have consistently held that arbitration agreements between two parties are valid and enforceable." *Gordon v. Kuzara,* 358 Mont. 432, 245 P.3d 37 (2010) (citing *Burkhart v. Semitool, Inc.,* 300 Mont. 480, 5 P.3d 1031 (2000)). It is true that Montana public policy forbids enforcement of arbitration clauses in adhesion contracts wherein the arbitration clause "lacks mutuality of obligation, is one-sided, and contains terms that are unreasonably favorable to the drafter." *Ticknor v. Choice Hotels Intern., Inc.,* 265 F.3d 931, 939 (9th Cir.2001) (quoting *Iwen v. U.S. West Direct,* 293 Mont. 512, 977 P.2d 989, 996 (1999)). However, in this case, the Court does not find that Montana public policy is offended by this arbitration clause, because this arbitration clause does not meet the *Iwen* criteria. *Bixler v. Next Fin. Grp., Inc.*, 858 F. Supp. 2d 1136, 1144 (D. Mont. 2012).

However, even after finding the contract to be an "adhesion contract", the fact that it is a contract of adhesion did not render it unenforceable. The court stated:

Instead, a contract of adhesion becomes unenforceable against the weaker party "if it is (1) not within their reasonable expectations, or (2) within their reasonable expectations, but, when considered in its context, proves unduly oppressive, unconscionable, or against public policy." *Zigrang,* 123 P.3d at ¶ 13. Because it is both a state and federal policy to favor arbitration, however, it cannot be said that an arbitration clause in an adhesion contract is *per se* unconscionable.

*Bixler v. Next Fin. Grp., Inc.*, 858 F. Supp. 2d 1136, 1144-45 (D. Mont. 2012).

In addition, the Ninth Circuit Court of Appeals similarly held in *Mortensen v. Bresnan Communications, LLC*, 722 F.3d 1151 (9th Cir. 2013) that (1) the FAA preempts Montana's reasonable expectations/fundamental rights rule and (2) the district court erred in not applying New York law because a state's preempted

21

public policy is an impermissible basis on which to reject the parties' choice-of-law selection.  In construing the effect of Montana law and the FAA, the court considered the Supreme Court's decision in *AT&T Mobility LLC v. Concepcion,* 563 U.S. 333, 131 S.Ct. 1740, 179 L.Ed.2d 742 (2011), and stated:

> We interpret *Concepcion* 's holding to be broader than a restriction on the use of unconscionability to end-run FAA preemption. We take *Concepcion* to mean what its plain language says: Any general state-law contract defense, based in unconscionability or otherwise, that has a disproportionate effect on arbitration is displaced by the FAA. We find support for this reading from the illustration in *Concepcion* involving a case "finding unconscionable *or unenforceable as against public policy* consumer arbitration agreements that fail to provide for judicially monitored discovery." 131 S.Ct. at 1747 (emphasis added). Other courts have read *Concepcion* in a similar way.

*Mortensen v. Bresnan Commc'ns, LLC,* 722 F.3d 1151, 1159 (9th Cir. 2013).  So, to the extent that Plaintiff relies on Montana State law to circumvent the arbitration clause in the policy of insurance, it is clear that even if the insurance policy could be considered a contract of adhesion, the reasonable expectations / fundamental rights rule cannot invalidate the AAA arbitration clause in the PAYP policy since this would be contrary to the FAA because it would invalidate an arbitration clause at a higher rate than other contract provisions. *Id.*  Moreover, the court applied the Restatement (Second) of Conflict of Law §188 to determine whether Montana had a materially greater interest than New York in the dispute arising from the consumer communications contract that governed services provided in Montana to Montana residents, so the subject matter of the contract and performance of it took

place almost entirely in Montana. *Mortensen*, 722 F.3d at 1161. Montana uses the

Restatement (Second) of Conflict of Laws § 187(2), which finds a choice-of-law

provision overcome where (1) Montana has a materially greater interest in the

transaction than the state whose law was selected by the parties and (2) application

of the selected state's law would be contrary to Montana's public policy.

*Mortensen*, 722 F.3d at 1161-62. However, the selection of New York law in the

contract as well as its application, was not considered to be contrary to Montana's

public policy. *Id*. at 1162.

Moreover, Galilea, LLC and Mr. and Mrs. Kittler were well versed in the

significance of a "Cruising Area" and the Navigational Limits section of the

policy, as demonstrated by the prior request for an insurance quote and the signed

application.  It would seem that the insuring of a yacht owned by a Nevada based

limited liability company, for navigation off the coast of California, based on

communications between the company and Pantaenius' offices in New York, has

even less contact with Montana than the communications contract that the Ninth

Circuit analyzed in *Mortensen*, where again the selection of New York law was not

considered to be contrary to Montana's public policy.  Nor is it unconscionable to

require Plaintiff to travel in relation to this dispute, considering that Galilea, LLC's

activities apparently already extend thousands of miles within the United States

and internationally.

Taking account of the FAA's requirements to compel arbitration, as provided at Point II, *supra*, the signed application submitted by Galilea, LLC wherein selection of the AAA binding arbitration clause was expressly provided demonstrates that a valid agreement to arbitrate exists. Galilea, LLC is similarly bound by the arbitration clause because the Court in both *Bixler* and *Mortensen* confirmed the FAA's preemption of Montana Code Ann. §27-5-114 and the reasonable expectations / fundamental rights rule, even considering Plaintiff's dubious claim that Montana law should apply to a grounded yacht owned by a Nevada based business entity.  Therefore, Galilea LLC is bound by the arbitration clause, and the claims asserted in Counts I – XII of its Complaint are all encompassed by the broadly worded arbitration clause calling for the resolution of "… any and all disputes arising under this policy shall be resolved exclusively by binding arbitration …"  Inasmuch as the requirements to compel arbitration under the FAA have been met, Defendants' submit that this Court should refer the matter to arbitration before the AAA.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court issue an order dismissing the action in its entirety pursuant to Rules 12(b)(3) and/or 12(b)(6) of the Federal Rules of Civil Procedure and the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.*  Further, Defendants respectfully request that the Court compel

Plaintiff to arbitrate the disputes between the parties pursuant to the binding and

enforceable arbitration clause set forth in the policy of insurance for the yacht,

GALILEA, that Defendants insured pursuant to the terms and conditions of that

policy, including the "Cruising Areas" warranty contained therein.

**DATED** this 19th day of October, 2015.

MOULTON BELINGHAM PC

By:   /s/ Gerry P. Fagan
      GERRY P. FAGAN

ATTORNEYS FOR DEFENDANTS

- and -

*Of Counsel*

Gerard W. White
Brian P. R. Eisenhower
HILL RIVKINS LLP
45 Broadway, Suite 1500
New York, NY 10006
Tel.: (212) 669-0600
gwhite@hillrivkins.com
beisenhower@hillrivkins.com

## **CERTIFICATE OF COMPLIANCE**

In compliance with Local Rule 7.1(d)(2)(E), I certify that the foregoing memorandum of law was prepared with Microsoft Word, which provides a word count of 6,433 words, excluding caption, certificates of service and compliance, table of contents and authorities, and exhibit index.

This 19th day of October, 2015.

Respectfully submitted,

/s/ Gerry P. Fagan
Gerry P. Fagan

*Attorneys for Defendants*