IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

FILED
FEB 24 2016
Clerk, U.S. District Court
District Of Montana
Billings

| | |
|---|---|
| GALILEA, LLC,<br><br>          Plaintiff,<br><br>vs.<br><br>AGCS MARINE INSURANCE COMPANY, LIBERTY MUTUAL INSURANCE COMPANY, and TORUS INSURANCE COMPANY,<br><br>          Defendants. | CV 15-84-BLG-SPW<br><br>OPINION and ORDER |

Before the Court are the Motion to Stay Arbitration Proceedings filed by Plaintiff Galilea, LLC and the Motion to Dismiss and to Compel Arbitration filed by Defendants AGCS Marine Insurance Company, Liberty Mutual Insurance Company, and Torus Insurance Company (collectively "Insurers"). The motions present the same question: Whether the parties are required to arbitrate this insurance dispute. Before answering that question, the Court is required to decide whether federal maritime, New York or Montana law governs the interpretation of the policy. For the following reasons, the Court decides that federal maritime law applies. The Court further concludes that the arbitration clause is enforceable. The Court invites further briefing on the scope of the arbitration clause and which of Galilea, LLC's claims are required to be arbitrated.

1

## I. Background

Galilea, LLC is a limited liability company organized under Nevada law. Chris and Taunia Kittler formed Galilea, LLC for the sole purpose of owning their sailing yacht *Galilea*. The Kittlers are Montana citizens and are the only members of Galilea, LLC.

In May 2015, the Kittlers were sailing aboard the *Galilea* in the Caribbean Sea. The Kittlers planned on eventually passing through the Panama Canal before reaching the *Galilea*'s home port of San Diego, California. After evaluating potential new insurers for the *Galilea*, Chris Kittler submitted a questionnaire to Pantaenius American Yacht Insurance ("Pantaenius"). Pantauenius has addresses in New York, Rhode Island, and Maryland, as well as several international locations. (*See* Doc. 7-2.) On May 7, 2015, Pantaenius provided the Kittlers with a premium quote for insurance coverage. The quote listed a Montana address for Galilea, LLC. The Kittlers communicated several times via phone and email with a Pantaenius representative named Andrea Giacomazza. Giacomazza's office is in Harrison, New York, as indicated on her email signature block. (Doc. 7-4 at 2-3.) The parties dispute whether Giacomazza knew that the Kittlers were in the Caribbean Sea. Both Chris and Taunia Kittler claim that they specifically told Giacomazza that they were in the Caribbean. (Doc. 7-3 at 2-3.) In contrast,

Giacomazza claims that the Kittlers never mentioned sailing in the Caribbean. (Doc. 20-7 at 1-2.)

On May 12, 2015, the Kittlers emailed an application for insurance to Pantaenius. The application listed Galilea, LLC as the insured and the port of registry as Las Vegas, Nevada, and indicated that the *Galilea* would spend hurricane season in San Diego. (Doc. 7-2 at 3-4.) Although the application was drafted by Pantaenius, the application listed the issuing insurance companies as the Insurers named in this action. (*Id.* at 5.) None of the Insurers are incorporated in New York or have their principal place of business in New York. They are registered to do business in Montana. (Doc. 1 at 2-3.) Galilea, LLC claims that Pantaenius acted as the Insurers' agent, (Doc. 7 at 11), while the Insurers represent that Pantaenius was their "third party administrator," (Doc. 20 at 9).

On May 13, 2015, Pantaenius emailed the Kittlers an insurance binder that bound the Insurers to coverage. Pantaenius also emailed the Kittlers a sample policy. The next day, Pantaenius emailed the Kittlers an invoice and the policy. The policy contained the following arbitration and choice of law provision on its fifth page:

> **A11: JURISDICTION AND CHOICE OF LAW**
> This insurance policy shall be governed by and construed in accordance with well established and entrenched principles and precedents of substantive United States Federal Maritime Law, but where no such established and entrenched principles and precedents exist, the policy shall be governed and construed in accordance with

the substantive laws of the State of New York, without giving effect
to its conflict of law principles, and the parties hereto agree that any
and all disputes arising under this policy shall be resolved exclusively
by binding arbitration to take place within New York County, in the
State of New York, and to be conducted pursuant to the Rules of the
American Arbitration Association.

(Doc. 7-6 at 14.) The Kittlers paid the premium on May 19, 2015.

On June 24, 2015, the *Galilea* was grounded in an accident off the coast of Panama and deemed a total loss. The Kittlers submitted a claim to Pantaenius the same day. The Insurers quickly denied coverage on the basis that the accident occurred outside of the geographical area identified in the policy.

After the Kittlers asked the Insurers to reconsider their denial of coverage, the Insurers initiated arbitration proceedings in New York. Galilea, LLC initiated this action against the Insurers and asserts 12 causes of action. This Court stayed the arbitration proceedings temporarily until this Court resolved Galilea, LLC's Motion to Stay Arbitration Proceedings.

## II. Pending Motions

Galilea, LLC has filed a Motion to Stay Arbitration Proceedings. In the motion, Galilea, LLC argues that despite the choice-of-law provision designating New York law or "well established and entrenched principles and precedents" of Federal maritime law as the governing law, Montana law should apply to the interpretation of the policy. Galilea, LLC continues that Montana law forbids arbitration clauses in insurance policies. Galilea, LLC also contends that it never

4

agreed to arbitrate any disputes, and in any event, the arbitration provision is unconscionable. Accordingly, Galilea, LLC asks this Court to permanently stay the arbitration proceedings.

The Insurers oppose Galilea, LLC's motion and have filed a competing Motion to Dismiss and to Compel Arbitration. The Insurers argue that pursuant to federal maritime law, the choice-of-law provision is valid. The Insurers contend that under both New York and federal maritime law, arbitration clauses are permissible in insurance policies. The Insurers further argue that the Federal Arbitration Act compels this Court to honor the policy's arbitration clause.

Accordingly, this Court must first determine what law – either federal maritime, New York, or Montana law – governs the interpretation of the policy. The second step is applying that law to the policy's arbitration clause and determining whether it is enforceable.

### III. Choice of Law

To determine the applicable law, the Court must first determine whether its subject matter jurisdiction derives from diversity of citizenship or from the maritime nature of the policy. *Aqua-Marine Constructors, Inc. v. Banks*, 110 F.3d 663, 670 (9th Cir. 1997). "This is so because a federal court sitting in diversity applies the choice-of-law rules of the forum state, whereas a federal court sitting in admiralty must apply federal maritime choice-of-law rules." *Id.* (internal citation

5

omitted). Diversity jurisdiction exists if there is complete diversity among the parties and the amount in controversy is at least $75,000. 28 U.S.C. § 1332(a). Federal courts also have exclusive jurisdiction over any "civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled." 28 U.S.C. § 1333(1). In the Complaint, Galilea, LLC asserts diversity jurisdiction and does not reference admiralty jurisdiction.

Diversity jurisdiction and admiralty jurisdiction are not mutually exclusive and can exist concurrently. *Ghotra by Ghotra v. Bandila Shipping, Inc.*, 113 F.3d 1050, 1055 (9th Cir. 1997). Accordingly, a plaintiff with in personam maritime claims has three choices: (1) File suit in federal court under the court's admiralty jurisdiction; (2) File suit in federal court under diversity jurisdiction if the requirements are met; or (3) File suit in state court. *Id.* at 1054. A party wishing to proceed under admiralty jurisdiction may designate its claims as such under Fed. R. Civ. P. 9(h)(1). Several procedural differences exist between diversity and admiralty jurisdiction. *Coronel v. AK Victory*, 1 F. Supp. 3d 1175, 1183 (W.D. Wash. 2014). Likely the greatest difference is the lack of a right to a jury trial under admiralty law, while claims brought under diversity jurisdiction preserve that right. *Ghotra by Ghotra*, 113 F.3d at 1054.

However, despite the procedural differences between proceeding under diversity or admiralty jurisdiction, the "same substantive law pertains to the claim

6

regardless of the forum...to ensure the uniform application of admiralty law." *Id.* at 1055. If the suit justifies the exercise of admiralty jurisdiction, "the choice of substantive law to be applied in this case is governed by federal maritime choice-of-law rules." *F.W.F., Inc. v. Detroit Diesel Corp.*, 494 F. Supp. 2d 1342, 1353 (S.D. Fla. 2007); *see also Buccina v. Grimsby*, 96 F. Supp. 3d 706, 709 (N.D. Ohio 2015) ("Substantive federal maritime law governs a plaintiff's maritime-based claim regardless of whether she has elected to proceed in admiralty or invoke this Court's diversity jurisdiction").

Generally, "admiralty law applies to all maritime contracts." *Aqua-Marine Constructors*, 110 F.3d at 670. While there is "no clear test for whether the subject matter of a contract is maritime," the Ninth Circuit has "recognized repeatedly that marine insurance policies are maritime contracts for purposes of admiralty jurisdiction." *La Reunion Francaise SA v. Barnes*, 247 F.3d 1022, 1024-25 (9th Cir. 2001). The contract's nature and subject matter, not the place of execution or place of performance, determines the existence of federal maritime jurisdiction. *Aqua-Marine Constructors*, 110 F.3d at 671. "If the subject of the contract relates to the ship and its uses as such, or to commerce or navigation on navigable waters, or to transportation by sea, the contract is maritime." *Id.*

Here, the Court finds that the insurance policy between the Insurers and Galilea, LLC is a marine insurance policy, therefore it is a maritime contract

subject to federal maritime jurisdiction. The policy's subject matter was the *Galilea*. The policy insured against risks that may have happened either to or onboard the *Galilea*. Since the policy's subject is the *Galilea* and its transportation by sea, the policy's place of performance or place of execution is irrelevant to determining jurisdiction. "The policy is a quintessential example of a maritime insurance policy covering a vessel for maritime risks." *Those Certain Underwriters at Lloyd's of London v. Eugene Horton, LLC*, 2012 WL 1642208 (W.D. Wash. May 10, 2012). Since it is a maritime contract, the policy is to be interpreted by substantive federal maritime law.

The next question is whether the choice-of-law provision is enforceable under federal maritime law. As mentioned above, the policy states that it will be interpreted by federal maritime law, or if that particular area of federal maritime law is not "established and entrenched," New York law will apply. (Doc. 7-6 at 14).

When a contract specifies which law applies, "admiralty courts will generally give effect to that choice." *Chan v. Soc'y Expeditions, Inc.*, 123 F.3d 1287, 1296-97 (9th Cir. 1997); *see also Great Lakes Reinsurance (UK) PLC v. Durham Auctions, Inc.*, 585 F.3d 236, 242 (5th Cir. 2009) ("Under federal maritime choice of law rules, contractual choice of law provisions are generally recognized as valid and enforceable"). To determine the validity of a choice-of-

8

law provision in a maritime contract, the Ninth Circuit looks to the Restatement (Second) of Conflict of Laws § 187(2) ("Restatement"). *Flores v. Am. Seafoods Co.*, 335 F.3d 904, 916-17 (9th Cir. 2003). Restatement § 187(2) provides:

> (2) The law of the state chosen by the parties to govern their contractual rights and duties will be applied, even if the particular issue is one which the parties could not have resolved by an explicit provision in their agreement directed to that issue, unless either
>
> > (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or
> >
> > (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.

Although it refers to the law of a "state," Restatement § 187(2) allows the consideration of the federal government and its interest in enforcing federal law. *Flores*, 335 F.3d at 917-18.

In *Flores*, the Ninth Circuit concluded that the federal government had a substantial relationship to maritime employment contracts due in part to more than two centuries of federal regulation. 335 F.3d at 917. Similarly, admiralty jurisdiction and marine insurance policies enjoy a long history together. *New England Mut. Marine Ins. Co. v. Dunham*, 78 U.S. 1 (1870). Additionally, *Flores* considered that federal law had statutes directly applicable to maritime

9

employment. *Flores*, 335 F.3d at 917. Here, courts should first look to federal admiralty law when interpreting a marine insurance policy. *Certain Underwriters at Lloyds, London v. Inlet Fisheries Inc.*, 518 F.3d 645, 649-50 (9th Cir. 2008). Courts should only look to state law in the absence of an applicable federal admiralty rule. *Id.*; *see also Wilburn Boat Co. v. Fireman's Fund Ins. Co.*, 348 U.S. 310, 323 (1955) (Frankfurter, J., concurring) ("Judicial enforcement of nationwide rules regarding marine insurance is…deeply rooted in history" and uniform application of established maritime rules is necessary to avoid "the crazy-quilt regulation of the different States"). This strong federal interest in marine insurance gives it a substantial relationship to the transaction under Restatement § 187(2)(a). *Flores*, 335 F.3d at 918.

Under Restatement § 187(2)(b), even assuming that Montana law would apply in the absence of an effective choice-of-law provision, the Court finds that Montana does not have a materially greater interest than the federal government. As discussed above, the United States has a significant interest in the enforcement of maritime contracts. Galilea, LLC contracted with the Insurers while out at sea. Montana's only connection to the transaction is that Galilea, LLC's only members – the Kittlers – are Montana citizens. Montana's interest is not greater than the federal interest in interpreting this particular marine policy.

Finally, Restatement § 187 cmt. b states that courts should not apply choice-of-law provisions in contracts of adhesion if it "would result in substantial injustice to the adherent." Under federal maritime law, there is substantial injustice if the contract's drafter overreached or took undue advantage of the adherent. *Flores*, 335 F.3d at 918. Here, the Court does not find that the Insurers overreached or took undue advantage of Galilea, LLC when they contracted for the insurance policy. Under Restatement § 187(2), the policy's choice-of-law provision is enforceable.

In conclusion, the Court finds it must apply federal maritime law when interpreting the insurance policy. In applying federal maritime law, the Court finds that the choice-of-law provision is enforceable.

## IV. The Arbitration Clause

The next step is to determine whether the policy's arbitration clause is enforceable under the governing law. As discussed above, the policy provides:

> [A]ny and all disputes arising under this policy shall be resolved exclusively by binding arbitration to take place within New York County, in the State of New York, and to be conducted pursuant to the Rules of the American Arbitration Association.

(Doc. 7-6 at 14.)

Under the Federal Arbitration Act ("FAA"), a "written provision in any maritime transaction" requiring the arbitration of a controversy arising out of the transaction "shall be valid, irrevocable, and enforceable, save upon such grounds

11

as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. If a party seeks to compel arbitration under a valid arbitration provision, "the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4. District courts have no discretion and "*shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Kilgore v. KeyBank, Nat. Ass'n*, 718 F.3d 1052, 1058 (9th Cir. 2013) (emphasis in original) (quoting *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985)). For better or worse, federal law has adopted a "liberal federal policy favoring arbitration." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011).

Here, the marine insurance policy issued by the Insurers to Galilea, LLC contains a written provision requiring the arbitration of "any and all disputes" arising under the policy. Under the FAA, this Court has no discretion and is required to enforce the provision and compel the parties to arbitrate the dispute.

Galilea, LLC advances several contract defenses recognized under Montana law against the arbitration provision. Specifically, Galilea, LLC argues that the arbitration provision is unconscionable and that Galilea, LLC did not agree to arbitration. Under the FAA, an arbitration clause can be deemed unenforceable under any grounds that "exist at law or in equity for the revocation of any

12

contract." 9 U.S.C. § 2. However, since Montana law does not apply, any Montana grounds cannot serve to revoke the contract.

Even applying any equivalent of unconscionability under federal maritime or New York law, Galilea, LLC has not shown that it can revoke the contract. Galilea, LLC argues that the arbitration provision is unconscionable because it unreasonably favors the insurers and it works to deprive Galilea, LLC of the protections of Montana law. Galilea, LLC also points to the exorbitant costs of arbitration proceedings.[1] However, a court cannot invalidate an arbitration provision as unconscionable based solely on the features of arbitration. *Concepcion*, 563 U.S. at 341; *see also Mortensen v. Bresnan Commc'ns, LLC*, 722 F.3d 1151, 1159 (9th Cir. 2013) (A party cannot use "unconscionability to end-run FAA preemption"). Nor can an arbitration clause be invalidated because the cost of arbitrating a claim would be higher than the potential recovery. *American Exp. Co. v. Italian Colors Rest.*, ___ U.S. ___, 133 S. Ct. 2304, 2311-12 (2013).

Galilea, LLC also argues that it never agreed to arbitrate any dispute. Of course, "the FAA does not require parties to arbitrate when they have not agreed to do so." *Volt Info. Sciences, Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*,

---

[1] The Insurers' position in the arbitration proceeding is that Galilea, LLC is required to pay administrative fees of $14,700 in addition to the hourly fees of three New York commercial arbitrators. (Doc. 7-7 at 2). This is nearly double the $7,779.30 premium paid by Galilea, LLC, (Doc. 7-3 at 4), and significantly more than the $400 filing fee required to open a civil case in the District of Montana.

13

489 U.S. 468, 478 (1989). However, Galilea, LLC accepted the terms of the insurance policy. Pantaenius emailed the policy to the Kittlers on May 14, 2015. (Doc. 7-6.) The Kittlers performed their end of the contract by paying the insurance premium on May 19, 2015. (Doc. 7-3 at 4.) Galilea, LLC agreed to the arbitration provision in the policy when it paid the premium, just as it agreed to every other provision and exclusion found in the policy.

Finally, Galilea, LLC contends that even if it is forced to arbitrate, the arbitration proceeding must occur in Montana. Galilea, LLC relies upon Mont. Code Ann. § 27-5-323. However, as discussed above, Montana law does not govern the interpretation of the contract. In addition, since Montana law does not apply, the Court declines to consider Galilea, LLC's argument that Mont. Code Ann. § 27-5-114(2)(c) precludes the enforcement of arbitration clauses in insurance policies.

The arbitration provision is valid and enforceable under the FAA. The Court does not find any legal grounds to revoke the contract.

## V. Conclusion

Similar to *Mortensen*, this was "not an easy case." 722 F.3d at 1162. Under the unique facts presented, the Court concludes that the policy's arbitration clause is enforceable. However, the enforceability of the arbitration clause is a separate question from the scope of the arbitration clause. *See Cape Flattery Ltd. v. Titan*

14

*Mar., LLC*, 647 F.3d 914 (9th Cir. 2011). Both parties briefly touch upon which of Galilea, LLC's allegations are referable to arbitration. In a footnote, Galilea, LLC posits that most of its claims are outside the arbitration clause's scope. (Doc. 7 at 15.) The Insurers state that all the claims "fall squarely within the scope of the arbitration clause." (Doc. 22 at 20.) Possibly due to word limit constraints, the parties do not cite legal authority or further flesh out their arguments regarding the scope of the arbitration clause. The Court would appreciate further briefing on which of Galilea, LLC's claims fall within the scope of the arbitration clause. The parties should also address whether this Court should stay litigation pending the conclusion of arbitration if this Court only compels the arbitration of some of the claims.

Accordingly, IT IS HEREBY ORDERED that the parties shall simultaneously file briefs on which claims this Court should compel the parties to arbitrate and whether a stay would be appropriate by **March 9, 2016.** The parties shall file response briefs by **March 23, 2016.**

DATED this 24th day of February, 2016.

Susan P. Watters
SUSAN P. WATTERS
United States District Judge