IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION



FILED
APR 05 2016
Clerk, U S District Court
District Of Montana
Billings

GALILEA, LLC,

Plaintiff,

vs.

AGCS MARINE INSURANCE
COMPANY, LIBERTY MUTUAL
INSURANCE COMPANY, and
TORUS INSURANCE COMPANY,

Defendants.

CV 15-84-BLG-SPW

OPINION and ORDER

This is a continuation of the Court's Opinion and Order issued February 24, 2016. At the Court's request, Plaintiff Galilea, LLC, and Defendants AGCS Marine Insurance Company, Liberty Mutual Insurance Company, and Torus Insurance Company (collectively "Insurers") supplied supplemental briefing. For the reasons discussed below, the Court only refers Counts I and II to arbitration and certifies its decisions for interlocutory review under 28 U.S.C. § 1292(b).

## I. Background

For the complete background, please see the Court's prior Opinion and Order (Doc. 37). The Court will only restate facts here to put this Order in context. Chris and Taunia Kittler formed Galilea, LLC for the sole purpose of owning their sailing yacht *Galilea*. The Kittlers are not attorneys or otherwise sophisticated

1

purchasers of insurance. The Insurers issued Galilea, LLC an insurance policy that contained the following arbitration and choice-of-law provision:

> **A11: JURISDICTION AND CHOICE OF LAW**
> This insurance policy shall be governed by and construed in accordance with well established and entrenched principles and precedents of substantive United States Federal Maritime Law, but where no such established and entrenched principles and precedents exist, the policy shall be governed and construed in accordance with the substantive laws of the State of New York, without giving effect to its conflict of law principles, and the parties hereto agree that any and all disputes arising under this policy shall be resolved exclusively by binding arbitration to take place within New York County, in the State of New York, and to be conducted pursuant to the Rules of the American Arbitration Association.

(Doc. 7-6 at 14.)

After the Insurers denied its claim, Galilea, LLC filed this action. In its Complaint, Galilea, LLC asserts the following causes of action against the Insurers:

> Count I – Declaratory Relief
> Count II – Breach of Contract
> Count III – Contract Reformation
> Count IV – Promissory Estoppel
> Count V – Equitable Estoppel
> Count VI – Breach of Implied Covenant of Good Faith & Fair Dealing
> Count VII – Breach of Fiduciary Duty
> Count VIII – Violation of the Montana Unfair Trade Practices Act
> Count IX – Negligent Misrepresentation
> Count X – Constructive Fraud
> Count XI – Tortious Interference with Contract
> Count XII – Tortious Interference with Prospective Economic Advantage

(Doc. 1.) The Court applied federal maritime law and determined that the policy's arbitration clause is enforceable. (Doc. 37 at 14.) The Court requested supplemental briefing on the arbitration clause's scope, and if some claims fall outside of the scope, whether litigation should be stayed pending the arbitration. (*Id.* at 14-15.)

## II. Who Decides Arbitrability

The Insurers argue that this Court should not consider the scope of the arbitration clause. Instead, the Insurers contend that the arbitrators should decide the issue. The Insurers point to the arbitration clause's statement that "any and all disputes arising under this policy shall be resolved exclusively by binding arbitration...to be conducted pursuant to the Rules of the American Arbitration Association." (Doc. 7-6 at 14.) Since the clause incorporates the Rules of the American Arbitration Association ("AAA"), the Insurers posit this Court should apply Rule R-7 of the AAA Commercial Arbitration Rules,[1] which provides:

> (a) The arbitrator shall have the power to rule on his or her own jurisdiction, including any objection with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim.

---

[1] In previous filings, Galilea, LLC indicated that it disputes the application of the Commercial Rules, and instead claims that the Consumer Arbitration Rules should apply. To determine arbitrability, the difference does not matter, as the Consumer Arbitration Rules also reserve the issue of arbitrability to the arbitrator. *See* Rule R-14 of the AAA Consumer Arbitration Rules.

3

(Doc. 43 at 2.)[2] Galilea, LLC argues that the arbitration clause does not contain an unmistakable delegation and that this Court should decide arbitrability. The Court agrees with Galilea, LLC and finds that the arbitration clause does not contain clear and unmistakable evidence of delegation.

Questions regarding the enforceability and scope of an arbitration clause are typically "to be decided by the court, not the arbitrator." *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986). However, parties can agree to arbitrate "gateway questions of arbitrability, such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68-69 (2010) (internal quotations omitted). Delegation of these gateway issues must be supported by "clear and unmistakable evidence." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) (quoting *AT & T Techs.*, 475 U.S. at 649). The presumption is against delegation, and any doubt or ambiguities are resolved in favor of judicial determination. *Id.* at 944-45.

The Ninth Circuit addressed whether the incorporation of the AAA rules adequately delegated the determination of arbitrability in *Brennan v. Opus Bank*, 796 F.3d 1125 (9th Cir. 2015). Similar to the instant case, the arbitration clause in

---

[2] The AAA Rules can be found on the AAA website, http://www.adr.org (last accessed April 4, 2016).

4

*Brennan* provided that any dispute arising from the contract "shall be settled by binding arbitration in accordance with the Rules of the American Arbitration Association." *Id.* at 1128. In contrast to the instant case, the contract was between two sophisticated parties - a bank and an experienced attorney and businessman that the bank hired as its Executive Vice President. *Id.* at 1127-28, 1131.

The Ninth Circuit held "that incorporation of the AAA rules constitutes clear and unmistakable evidence that contracting parties agreed to arbitrate arbitrability." *Id.* at 1130. By referencing the AAA rules, the parties intended to be bound by the AAA rule that gives the arbitrator power to rule on his or her own jurisdiction. *Id.* However, the Ninth Circuit limited its holding to the facts presented before it, which involved "an arbitration agreement between sophisticated parties." *Id.* at 1131 (internal quotation omitted). It expressly reserved the question of "the effect if any of incorporating AAA arbitration rules into consumer contracts or into contracts of any nature between unsophisticated parties." *Id.* (internal modifications and quotations omitted).

Facing a situation similar to the instant case, the Northern District of California addressed the unanswered question from *Brennan* and ruled that incorporating the AAA rules into a contract with an unsophisticated party did not provide "clear and unmistakable evidence of delegation." *Meadows v. Dickey's Barbecue Restaurants Inc.*, ___ F. Supp. 3d ___, 2015 WL 7015396, at *6 (N.D.

5

Cal. Nov. 12, 2015). In *Meadows*, the court noted that a sophisticated party could reasonably be expected to understand that the incorporation of the AAA rules in a contract means that an arbitrator would determine the arbitrability. *Id.* However, an inexperienced individual untrained in the law would be much less likely to reach the same conclusion. *Id.* Accordingly, the court did not extend *Brennan*'s holding to cases involving an unsophisticated party. *Id.* at *7. Since one of the parties was not "sophisticated," incorporation of the AAA rules did not constitute "clear and unmistakable evidence" of delegation, and the court determined arbitrability. *Id.*

The Court finds *Meadows* persuasive and finds that the incorporation of the AAA rules into the insurance policy is not clear and unmistakable evidence of delegation. Despite the Insurers' assertion, Galilea, LLC is not a sophisticated party for these purposes. Galilea, LLC was established for the sole purpose of owning the *Galilea*. Chris and Taunia Kittler were the only members of Galilea, LLC. Neither of them were attorneys or insurance professionals, and they did not consult with an attorney or an insurance broker before purchasing the policy from the Insurers. (Doc. 23-1 at 2-3; Doc. 23-2 at 2-3.) The Insurers point to the Kittlers' sailing experience. However, a party that is sophisticated for sailing purposes is not necessarily sophisticated for contract and arbitration law purposes.

6

Given this lack of experience, the Kittlers would likely not understand that a reference to the AAA rules would delegate the determination of arbitrability to the arbitrator. While the Court finds that the arbitration clause is enforceable (*see* Doc. 37), the Court also finds that the statement that the arbitration would "be conducted pursuant to the Rules of the American Arbitration Association" is not clear and unmistakable evidence of delegation when one party is "unsophisticated." An individual not well-versed in arbitration law is unlikely to be aware that the AAA rules provide for the arbitrator to determine his own jurisdiction. As any doubts are resolved against delegation, this Court will determine which claims come within the scope of the arbitration clause.

### III. The Scope of the Arbitration Clause

As mentioned above, the policy provides that "any and all disputes arising under this policy shall be resolved exclusively by binding arbitration." (Doc. 7-6 at 14.) The Insurers point to the terms "any and all" to argue that all of Galilea, LLC's claims fall under the scope of the arbitration clause. Alternatively, the Insurers argue that this Court should enforce the arbitration clause found in the application for insurance. Galilea, LLC argues that the Ninth Circuit defines the term "arising under" narrowly and that only its first two claims are referable to arbitration. The Court agrees with Galilea, LLC.

7

In the Ninth Circuit, the exact language used in an arbitration clause is crucial. For example, if the clause uses the phrase "arising in connection with," it is broadly interpreted to reach "every dispute between the parties having a significant relationship to the contract and all disputes having their origin or genesis in the contract." *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 721 (9th Cir. 1999). The term "arising out of or relating to" is similarly interpreted broadly. *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1131 (9th Cir. 2000).

While those terms are interpreted broadly, the phrase "arising under" is construed narrowly. *Mediterranean Enterprises, Inc. v. Ssangyong Corp.*, 708 F.2d 1458, 1464 (9th Cir. 1983). When an arbitration agreement covers "disputes 'arising under' the agreement, only those disputes relating to the interpretation and performance of the contract itself are arbitrable." *Cape Flattery Ltd. v. Titan Mar., LLC*, 647 F.3d 914, 924 (9th Cir. 2011) (quoting *Mediterranean*, 708 F.2d at 1464). Tort claims alleging wrongful conduct separate from the breach of contract do not require the interpretation of the contract, and therefore do not "arise under" the written agreement. *Tracer Research Corp. v. Nat'l Envtl. Servs. Co.*, 42 F.3d 1292, 1295 (9th Cir. 1994). Further, a tort claim is not arbitrable simply because it would not have arisen "but for" the contract. *Cape Flattery*, 647 F.3d at 924.

Here, the arbitration clause covers "all disputes arising under" the policy. Accordingly, its scope is narrow and only applies to claims related to the

8

interpretation and performance of the policy itself. In reviewing the Complaint, the Court agrees with Galilea, LLC that only the first two counts "arise under" the policy. In Count I, Galilea, LLC requests a declaratory judgment that the Insurers are responsible under the policy to cover the loss of the *Galilea*. In Count II, Galilea, LLC alleges a breach of contract claim against the Insurers for failing to honor the policy's terms. Both of those claims require the interpretation of the policy.

The remaining claims do not relate solely to the interpretation and performance of the policy. Count III is a close call, as Galilea, LLC requests the Court to reform the contract to reflect what it claims to be the parties' mutual intent. Under contract law, "a court may reform a contract to reflect the true intent of the parties if both parties were mistaken about the content or effect of the contract." *Skinner v. Northrop Grumman Ret. Plan B*, 673 F.3d 1162, 1166 (9th Cir. 2012) (citing Restatement (Second) of Contracts § 155 (1981)). When resolving a reformation claim, the Court must look outside the policy to determine the parties' intentions. *Id.* Since the Court would be required to look beyond the its terms, Count III does not "arise under" the policy.

The Court finds that the remaining claims also fall outside the scope of the arbitration clause. Counts IV-XII involve varying tort theories that allege independent wrongs separate from breaching the contract. These claims generally

turn on alleged misrepresentations and the alleged misconduct in denying coverage. They do "not turn on an interpretation of any clause in the contract." *Cape Flattery*, 647 F.3d at 924. Since they do not "arise under" the policy, the Court cannot compel Galilea, LLC to arbitrate Counts III-XII.

The Court is not persuaded by the Insurers' attempt to enforce the arbitration clause found in Galilea, LLC's application for insurance. The application provided that "[a]ny dispute arising out of or relating to the relationship between [the Insurers] and the insured shall be settled by arbitration…" (Doc. 7-2 at 7.) As mentioned above, the phrase "arising out of or relating to" is interpreted broadly. However, the Insurers did not rely upon the application's arbitration clause when they filed their Demand for Arbitration before the AAA. (Doc. 20-2.) Instead, the Insurers only cite the arbitration clause found in the policy. (*Id.*) The arbitration proceedings that the Insurers are trying to compel Galilea, LLC to participate in are solely premised on the policy's arbitration clause, not the application's provision. Accordingly, the Court only construes the policy's arbitration clause.

## IV. Certification

The Court requested that the parties brief whether a stay would be appropriate in the event that the Court determined that some claims fall outside the scope of the arbitration clause. The Insurers argue that this Court should stay this litigation pending the resolution of the arbitration proceedings. Galilea, LLC

10

proposes a different course of action. It suggests that this Court should maintain the stay in the arbitration proceedings and certify this Court's decisions for interlocutory review under 28 U.S.C. § 1292(b). After careful consideration, the Court agrees with Galilea, LLC.

Parties typically can only appeal final orders that end litigation. *Couch v. Telescope Inc.*, 611 F.3d 629, 632 (9th Cir. 2010). However, a narrow exception is found in 28 U.S.C. § 1292(b), which provides:

> When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals which would have jurisdiction of an appeal of such action may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the order: *Provided, however,* That application for an appeal hereunder shall not stay proceedings in the district court unless the district judge or the Court of Appeals or a judge thereof shall so order.

Certification for interlocutory review is "to be used only in exceptional situations in which allowing an interlocutory appeal would avoid protracted and expensive litigation." *In re Cement Antitrust Litig.*, 673 F.2d 1020, 1026 (9th Cir. 1981). To certify under § 1292(b), the district court must find: "(1) that there be a controlling question of law, (2) that there be substantial grounds for difference of opinion, and

(3) that an immediate appeal may materially advance the ultimate termination of the litigation." *Id.*

Given the unique facts and circumstances of this case, the Court finds it appropriate to certify under § 1292(b). First, there is a potentially controlling question of law. For purposes of § 1292(b), "controlling" means that "resolution of the issue on appeal could materially affect the outcome of litigation in the district court." *In re Cement Antitrust Litig.*, 673 F.2d at 1026. In the previous Opinion and Order, the Court gave effect to the policy's choice-of-law provision and applied the Federal Arbitration Act ("FAA") to find the arbitration clause enforceable. If the Court did not uphold the choice-of-law provision and applied Montana law, as Galilea, LLC urged, then arbitration of the insurance policy could be prohibited by Mont. Code Ann. § 27-5-114(2)(c).

The Insurers previously argued that Mont. Code Ann. § 27-5-114(2)(c) is preempted by the FAA. If true, arbitration would be compelled even if Montana law applied. While Judge Lovell opined in *dicta* that § 27-5-114(2)(c) is preempted by the FAA, *Bixler v. Next Fin. Grp., Inc.*, 858 F. Supp. 2d 1136, 1146-47 (D. Mont. 2012), other courts have held that similar statutes are excepted from FAA preemption by virtue of the McCarran-Ferguson Act. *See McKnight v. Chicago Title Ins. Co.*, 358 F.3d 854, 859 (11th Cir. 2004); *Mut. Reinsurance Bureau v. Great Plains Mut. Ins. Co.*, 969 F.2d 931, 935 (10th Cir. 1992); and

12

*Standard Sec. Life Ins. Co. of New York v. West*, 267 F.3d 821, 824 (8th Cir. 2001). The Court does not presently express an opinion on whether Mont. Code Ann. § 27-5-114(2)(c) is preempted by the FAA. However, if the Ninth Circuit determines that Montana law should apply, that resolution "could materially affect the outcome of litigation in the district court." *In re Cement Antitrust Litig.*, 673 F.2d at 1026.

Second, the Court finds that there are substantial grounds for difference of opinion. This prong can be met "where the circuits are in dispute on the question and the court of appeals of the circuit has not spoken on the point, if complicated questions arise under foreign law, or if novel and difficult questions of first impression are presented." *Couch*, 611 F.3d at 633 (internal quotation omitted). A disagreement about the interpretation of settled law is insufficient for certification. *Id.* Further, "the mere presence of a disputed issue that is a question of first impression, standing alone, is insufficient to demonstrate a substantial ground for difference of opinion." *Id.* at 634 (internal quotation omitted).

This case involved a novel and unique tension between federal maritime law and the state regulation of insurance. The Court could not locate a case directly on point where a marine insurance policy contained a provision that is explicitly prohibited under the forum state's laws. As the Court pointed out in its prior Opinion and Order, Ninth Circuit precedent provides that courts should only look

13

to state law in the absence of an applicable federal maritime rule. *Certain Underwriters at Lloyds, London v. Inlet Fisheries Inc.*, 518 F.3d 645, 650 (9th Cir. 2008) (citing *Wilburn Boat Co. v. Fireman's Fund Ins. Co.*, 348 U.S. 310, 314 (1955)). However, *Wilburn Boat* also stated that:

> Under our present system of diverse state regulations, which is as old as the Union, the insurance business has become one of the great enterprises of the Nation. Congress has been exceedingly cautious about disturbing this system, even as to marine insurance where congressional power is undoubted. We, like Congress, leave the regulation of marine insurance where it has been—with the States.

348 U.S. at 320-21.

The Court upheld the application of the choice-of-law provision under Restatement (Second) of Conflict of Laws § 187(2). Specifically, the Court determined that under Restatement § 187(2)(b), "Montana does not have a materially greater interest than the federal government." (Doc. 37 at 10.) The Court still believes it correctly resolved the issue. However, given the tension between the federal interest in the uniform application of maritime contracts and the states' interest in regulating insurance, the Court recognizes that are substantial grounds for difference of opinion as to whether the choice-of-law provision in the policy should be enforced. The Court does not reach this conclusion simply because there is uncertainty. Instead, this question presents unique and novel issues involving federalism and the competing interests in the regulation of maritime insurance contracts.

14

Third, the Court finds an immediate appeal may materially advance the ultimate termination of the litigation. As discussed above, if the Court erred and Montana law applies, then arbitration may be precluded by Mont. Code Ann. § 27-5-114(2)(c). The parties would then proceed to litigate the merits of Galilea, LLC's claims. However, as things stand now, the parties would arbitrate Counts I and II in New York. If the Court stays this action, then the parties would resume litigation on Counts III-XII upon the completion of arbitration. After the litigation terminates, possibly after a jury trial, Galilea, LLC could then appeal this Court's Order compelling arbitration.

If the Ninth Circuit determines that this Court erroneously compelled arbitration, Galilea, LLC would have unnecessarily spent an enormous sum of money and time arbitrating the dispute. As the Court mentioned in the previous Opinion and Order, the Insurers contend that the AAA commercial rules apply. If true, Galilea, LLC would be required to pay administrative fees of $14,700 in addition to the hourly fees of three New York commercial arbitrators. (Doc. 7-7 at 2.) Even if the arbitration decision is set aside by a court, Galilea, LLC would not recover the fees it expended. Further, litigation on Counts I and II would be significantly delayed by forcing the parties to arbitrate the dispute before having the Ninth Circuit review this Court's decisions. Accordingly, the Ninth Circuit will materially advance the end of litigation if it allows an immediate appeal. This

is an exceptional situation "in which allowing an interlocutory appeal would avoid protracted and expensive litigation." *In re Cement Antitrust Litig.*, 673 F.2d at 1026.

## V. Conclusion

For the reasons stated above and in the Opinion and Order issued on February 24, 2016 (Doc. 37), IT IS HEREBY ORDERED:

1. Galilea, LLC's Motion to Stay Arbitration Proceedings (Doc. 6) is DENIED.

2. The Insurers' Motion to Dismiss and to Compel Arbitration (Doc. 21) is GRANTED as to Counts I and II, but DENIED as to the remaining allegations.

3. Galilea, LLC's Motion to Strike the Insurers' Request for Transfer of this Case to New York Federal Court (Docs. 25 and 27) is DENIED as moot. This Court did not consider the Insurers' argument that this Court should transfer this case to the U.S. District Court for the Southern District of New York.

4. The Court certifies its decisions regarding the policy's choice-of-law provision and the arbitration clause's enforceability for interlocutory review under 28 U.S.C. § 1292(b). Galilea, LLC shall file its appeal within ten days.

5. This action shall be STAYED pending a decision by the Ninth Circuit.

6. This Court's Order (Doc. 16) staying the arbitration proceedings in AAA Case No. 01-15-0004-4914 shall remain in effect pending a decision by the Ninth Circuit.

DATED this 4th day of April, 2016.

SUSAN P. WATTERS
United States District Judge